UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VICTORIA M.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-3125-RLY-MJD |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Claimant Victoria M. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 423(d), 1382. District Judge Richard L. Young has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 15.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in March 2018, alleging an onset of disability as of February 19, 2018.  [Dkt. 11-5 at 2, 8.]  Claimant's applications were denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Joy Turner ("ALJ") on February 25, 2020.  [Dkt. 11-2 at 32.]   On March 5, 2020, ALJ Turner issued her determination that Claimant was not disabled.  *Id.* at 15.  The Appeals Council then denied Claimant's request for review on October 6, 2020.  *Id.* at 2.  Claimant timely filed her Complaint on December 4, 2020, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of February 19, 2018. [Dkt. 11-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease, migraine, affective disorder, and anxiety disorder." *Id*. at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The

ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; avoid hazardous machinery and heights; avoid more than occasional exposure to extreme heat, cold, and wetness; avoid more than occasional exposure to environmental conditions as defined by the SCO; limited to a [sic] moderate noise environments defined as an office setting with [sic] typewriters are used or a grocery store. Limited to simple routine tasks in a low stress environment defined as having only occasional decision making with occasional changes in work settings and no strict production quotas with emphasis on a per shift rather than a per hour basis. Limited to no interaction with the public; no tandem tasks with coworkers; and occasional interaction with coworkers and supervisors.

*Id.* at 21.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id.* at 24. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 25.

### IV. Discussion

Claimant sets forth numerous ways in which she alleges the ALJ committed reversible error. Each of Claimant's arguments is addressed below.

**A. Findings Relating to Migraine Headaches**

Claimant argues that the ALJ erred by "fail[ing] to account for [Claimant's] severe, chronic, and frequent migraine headaches in terms of the impact they have on her ability to work

and maintain employment," [Dkt. 14 at 23], and that the ALJ erred in her evaluation of Claimant's subjective symptoms.[3]

There is no question that Claimant testified that her migraine symptoms were disabling. *See, e.g.*, [Dkt. 11-2 at 48] (Claimant's testimony that she has migraines "almost every other day" despite medication and that they cause pain that rates "[a]bout a seven" out of ten); *id.* at 53 (Claimant's testimony that she had to miss work or leave early because of migraines at least once a week during a failed work attempt after her alleged onset date). Pursuant to Social Security Rule 16-3p, "[the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." Social Security Rule 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Social Security Rule 16-3p, which rescinded Social Security Rule 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her credibility. *Id.* at *2. The "change in wording is meant to clarify that [ALJ's] aren't in the business of impeaching claimants' character; obviously [ALJ's] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an

---

[3] In making this argument, Claimant fails to identify what subjective symptoms she believes the ALJ failed to evaluate properly. However, Claimant's arguments regarding the ALJ's consideration of her migraine headaches necessarily implicates the ALJ's consideration of the subjective symptoms from those headaches. Accordingly, the Court has considered Claimant's subjective symptom argument as it relates to her migraine symptoms.

ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests").  At stage two of the Social Security Rule 16-3p analysis, the ALJ considers the claimant's alleged symptoms in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3).

      Here, the ALJ acknowledged that Claimant suffered from migraines and found them to be a severe impairment, but concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this opinion."  [Dkt. 11-2 at 22.]  The only reason the Court can discern from the ALJ's decision for discounting Claimant's statements regarding her subjective symptoms is the ALJ's statement that "[a]s for claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent." *Id.*  The Court has scoured the ALJ's opinion for an explanation of what inconsistencies the ALJ is referring to, but the ALJ does not expressly point to any inconsistent statements by Claimant about her symptoms.  The ALJ does mention that "[t]he claimant started Aimovig in August 2019 and reported doing well on it and that it was keeping her migraine free." *Id.*  Perhaps the ALJ was implying that Claimant's August 2019 report was inconsistent with her other statements (including her testimony) regarding her migraines.  If so, that implication is not supported by the record.

      To understand why, a review of the evidence of record regarding Claimant's use of Aimovig is necessary.  Claimant first received an injection of Aimovig during a July 9, 2018,

6

appointment with her primary care physician, Dr. Laroche, at which she reported that she had been experiencing a migraine for five days. The following day, Dr. Laroche's staff reported that Aimovig was not covered by Claimant's insurance; Dr. Laroche responded that Claimant "has appointment with neurology—see if can get botox or if they can get [Aimovig] covered." [Dkt. 11-8 at 115.] At her July 12, 2018, appointment with her neurologist, Claimant was prescribed Botox injections; the neurologist's notes do not mention Aimovig. However, Claimant also was unable to get the prescribed Botox injections due to insurance issues. [Dkt. 11-8 at 219.] The next mention of Aimovig in Claimant's records is from an October 15, 2018, visit with Dr. Laroche, again for an acute migraine.[4] Dr. Laroche gave Claimant an injection of Aimovig because she had a sample dose, meaning that Claimant would not have to pay for it. [Dkt. 11-8 at 248.] She received another sample of Aimovig from Dr. Laroche on November 9, 2018, reporting that "it does seem to be helping." [Dkt. 11-8 at 298.] Claimant returned to Dr. Laroche on February 12, 2019, and received another sample injection of Aimovig. [Dkt. 11-8 at 300.] Dr. Laroche's notes from that visit state: "Has noticed a big difference in starting aimovig. Needing samples. Hoping that once her new insurance starts up she can get coverage." *Id.* at 305. Claimant returned to Dr. Laroche on March 27, 2019, for a "tension headache," along with other concerns. [Dkt. 11-8 at 359.] Dr. Laroche's note states: "Hx of migraines—has been

---

[4] In between her July 12, 2018, visit with her neurologist and this October 15, 2018, visit with Dr. Laroche, Claimant had been seen by Dr. Laroche (or her nurse practitioner) for acute migraine symptoms on August 15, 2018, [Dkt. 11-8 at 122], August 27, 2018, *id.* at 155, September 19, 2018, *id.* at 189, and October 8, 2018, *id.* at 220. In addition, on the advice of Dr. Laroche, Claimant went to the emergency room on August 28, 2018, because of her migraine symptoms and was admitted overnight. [Dkt. 11-7 at 247.] She also saw her neurologist on September 10, 2018. [Dkt. 11-7 at 409.] At that appointment, her medication was adjusted, but again there is no mention of Aimovig.

7

doing well on aimovig.  Due for next does in April.  Now with tension headache." *Id.*  On August 14, 2019, Claimant saw Dr. Laroche "for evaluation of headache." [Dkt. 11-8 at 494.] Dr. Laroche's note states: "Hx of migraines.  On Aimovig and had been doing well on it—it was doing a good job of keeping her migraine free.  She didn't pick up samples until recently and got behind on taking it—did take injection yesterday.  For the past 2 wks has been having worsening headache." *Id.*  Dr. Laroche's notes from a September 21, 2019, visit indicate that Claimant reported memory problems and that "[l]ikely migraine and depression playing a role." *Id.*  She further noted that her office had no Aimovig samples at the time to give to Claimant.  Claimant called on October 8, 2019, and was again told no samples were available.  *Id.* at 589.  Claimant saw Dr. Laroche on November 11, 2019, and reported that she had "been having more migraines" and had not been able to get Aimovig samples.  *Id.* at 595.  Dr. Laroche gave her samples of another migraine medication, Emgality.  Claimant testified at the hearing that she was taking Emgality injections but still experiencing frequent migraines.

      This evidence of record demonstrates that Aimovig was helpful to Claimant when she was able to take it consistently, but that she was not able to take it for much of the relevant time period because it was not covered by her insurance and her physician was unable to give her samples.  The ALJ cites to two sources for Claimant's statements about her headache symptoms: a Headache Questionnaire she completed in June 2018, before her first dose of Aimvig, and her hearing testimony, which was given after she stopped taking Aimvig and switched to a different medication.  To the extent the ALJ determined that Claimant was not credible because at some point in between she reported that she received relief from Aimvig, that conclusion is not supported by substantial evidence.  If the ALJ based her determination that Claimant's assertions about her headache symptoms were not fully credible on something else, the ALJ's decision does

not reveal what that is. Accordingly, this case must be remanded to the Commissioner to reassess the subjective symptoms caused by Claimant's headaches and the effect of her headaches on her RFC and to properly explain the basis for that assessment.

Claimant also argues that the ALJ erred in finding that her migraines do not equal Listing 11.02.[5] On remand, the ALJ should reevaluate her step three determination in light of her reassessment of Claimant's migraine symptoms, taking care to make a specific finding whether Claimant's migraines equal Listing 11.02.[6]

### B. Statement from Treating Physician

Next, Claimant argues that the ALJ erred by failing to acknowledge and assign weight to an October 8, 2018, letter from Claimant's primary care physician, Dr. Laroche, which reads as follows:

> [Claimant] is under my medical care. She is currently being treated for migraine headaches. There have been adjustments on her therapy. When her migraines

---

[5] As the Commissioner points out in her response, Claimant's argument is based in large part on guidance in the Program Operations Manual System ("POMS") that was no longer in effect when the ALJ rendered her decision. *See* [Dkt. 14 at 15] (citing to POMS § DI 24505.015). Indeed, Claimant's brief cites to this section of POMS as being "*available at* https://secure.ssa.gov/appsl0/poms.nsf/lnx/0424505015 (last visited June 12, 2015)." [Dkt. 14 at 15.] In fact, that web page is no longer available and apparently has not been since at least September 2018. *See David G. v. Berryhill,* 2018 WL 4572981, at *5 (D. Minn. Sept. 24, 2018) ("It appears that POMS DI 24505.015 has been superseded by POMS DI 24508.10. In addition, POMS DI 24505.015 is no longer available on the Social Security Administration's website, *see* S.S.A., POMS, https://secure.ssa.gov/apps10/poms.nsf/ chapterlist!openview&restricttocategory=04, and POMS DI 24508.010 is the policy that now applies to listing equivalence, *see* S.S.A., POMS, https://secure.ssa.gov/apps10/ poms.nsf/lnx/0424508010.") (internal citation omitted). It is disappointing that Claimant's counsel failed to check a citation to a website that had not been visited for over six years before relying on it in a brief.

[6] The Court notes that, other than in a boilerplate heading, the ALJ makes no mention of whether Claimant's physical impairments **equal** any listing; rather, she discusses only whether they **meet** the relevant listings.

> flare it can be difficult for her to concentrate as well as complete tasks. Please contact my office with any questions or concerns.

[Dkt. 11-8 at 224.] The Commissioner does not argue that the ALJ's failure to acknowledge this opinion was not erroneous, but rather that any error in this regard is harmless.

It is true that

> administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. . . . That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be.

See *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Here, the ALJ found that Claimant had moderate limitations in concentrating, persisting or maintaining pace, [Dkt. 11-2 at 20], and stated that she accounted for those and other mental impairments by "limiting the claimant to simple routine tasks and limited social interaction." *Id.* at 23-24. In fact, the ALJ's RFC contains the following limitations to account for Claimant's mental impairments:

> Limited to simple routine tasks in a low stress environment defined as having only occasional decision making with occasional changes in work settings and no strict production quotas with emphasis on a per shift rather than a per hour basis. Limited to no interaction with the public; no tandem tasks with coworkers; and occasional interaction with coworkers and supervisors.

*Id.* at 21. Thus, the Commissioner reasonably argues that the ALJ would have reached the same conclusion even if she had addressed Dr. LaRoche's rather vague statement that "[w]hen her migraines flare it can be difficult for [Claimant] to concentrate as well as complete tasks." However, given that this case is being remanded on unrelated grounds, the Court need not determine if the Commissioner is correct. Rather, the ALJ shall correct this error and address Dr. LaRoche's statement on remand.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings consistent with this **Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 21 MAR 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.